1083-15  1084-15  1085-15

NO.PD-1085-15

IN THE COURT OF CRIMINAL APPEALS OF

THE STATE OF TEXAS

ORIGINAL

NO.05-14-00791-CR

NO.05-14-00792-CR

NO.05-14-00793-CR

IN THE COURT OF APPEALS FOR THE

FIFTH SUPREME JUDICIAL DISTRICT OF TEXAS

DALLAS,TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

TADARRIAN ANTWOINE JOHNSON,Appellant

v.

THE STATE OF TEXAS,Appellee

APPELLANT'S PETITION FOR DISCRETIONARY

REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

MR.TADARRIAN A.JOHNSON#1936248

COFFIELD UNIT/TDCJ-CID
2661 FM 2054
Tennessee Colony,Texas 75884

## STATEMENT REGARDING ORAL ARGUMENT

Appellant hereby waives oral argument,unless the State requests oral argument.Tex.R.App.Pro.Rule 68.4(c).

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT........................................ ii

TABLE OF CONTENTS....................................................... iii

LIST OF AUTHORITIES..................................................... iv

STATEMENT OF THE CASE....................................................1

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE......................... 1

GROUNDS FOR REVIEW..................................................... 2

GROUND FOR REVIEW NUMBER ONE

THE COURT OF APPEALS ERRED IN

FINDING THAT THE RECORD DOES NOT

DEMONSTRATE THAT THE TRIAL JUDGES ACTIVE

PARTICIPATION IN THE APPELLANT'S PUNISH-

MENT HEARING WAS A VIOLATION OF HIS SUBSTANTIAL

RIGHTS,WHEREBY NO OBJECTION IS REQUIRED,TO

WARRANT APPELLATE REVERSAL............................................2-10

GROUND FOR REVIEW NUMBER TWO

THE COURT OF APPEALS ERRED IN

FINDING THAT THE TRIAL COURT'S FAILURE TO

REMAIN NEUTRAL AS AN ARBITER,DID NOT DEPRIVE

THE APPELLANT OF HIS RIGHT TO DUE PROCESS.............................10-11


PRAYER................................................................ 11

CERTIFICATE OF SERVICE................................................ 12

CRTIFICATE OF COMPLIANCE..........................................

# LIST OF AUTHORITIES

Cases

**U.S.V.ANDERSON,**
**993 F.2d 1435**(9th Cir.1993)............................................. 10

**BRUMIT v.STATE,**
206 S.W.3d 639,645(Tex.Crim.App.2006)....................................... 9

Gagnon v.Scarpell,
411 U.S.778,786(1973)....................................................... 9

**In re Murchison,**
349 U.S.133,136(1955)...................................................... 10

**U.S.v.Rodriguez,**
197 F.3d at 158-159......................................................... 9

**U.S.v.Vonn,**
122 S.Ct.1043(2002)........................................................ 10

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

**TADARRIAN ANTWOINE JOHNSON**,Appellant below submits this Petition for Discretionary Review pursuant to Rule 68.1,Texas Rules of Appellate Procedure,and requests that the Fifth Court of Appeals in this cause,and reverse the same and order that the Appellant be granted a new trial and/or plea proceeding.

## STATEMENT OF THE CASE

Appellant was indicted for the felony for burglary of a building,aggravated assault of a public servant,and evading arrest.(CR1:6;CR2:6;CR3:6).The indictments in the burglary of a building and aggravated assault cases alleged two prior felony convictions as enhancement paragraphs.(CR1:6;CR2:6).However, the State moved to strike both enhancement paragraphs,from these two indictments,and the trial court granted the motion.(CR1:5,28;CR2:5;35;R.R.2:5-6; R.R.3:5).The indictment in the evading arrest case alleged a prior conviction for misdemeanor evading arrest.(CR3:6).

Appellant pleaded guilty and judicially confessed to the charges.(CR1:24-27, 29;CR2:31-34,36-37;CR3:16-19,21;R.R.2:8;State's Exhibit 1).The trial court found Appellant guilty of all three charges.(R.R.3:58).The trial court assessed punishment at 10 months imprisonment in the state jail in the burglary of a building and evading arrest cases.(CR2:5,R.R.3:58).The trial court overruled overruled by operation of law.(CR1:43-44;CR2:53-54,CR3:34-35):TEX.R.APP.P.21.8

## STATEMENT OF THE PROCEDURAL HISTORY
## OF THE CASE

On July 31,2015,in an unpublished opinion,the Fifth Court of Appeals rendered its Judgment and Opinion affirming Appellant's conviction.No motion for rehearing was filed.

1.

GROUND FOR REVIEW NUMBER ONE

THE COURT OF APPEALS ERRED IN FINDING THAT THE RECORD DOES NOT DEMONSTRATE THAT THE TRIAL JUDGES ACTIVE PARTICIPATION IN THE APPELLANT'S PUNISHMENT HEARING WAS A VIOLATION OF HIS SUBSTANTIAL RIGHTS,WHEREBY NO OBJECTION IS REQUIRED TO WARRANT APPELLATE REVERSAL.(See R.R.3:56-58).The proceedings concluded.(R.R .3:58.).


ARGUMENT

**The Court of Appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of the United States Supreme Court and the Court of Criminal Appeals.**

When the judge engaged in extensive cross-examination of Appellant,whereby conducting her own investigation,and also the judges verbal commentary through-hout Appellant's testimony clearly demonstrates the trial court's failure to remain impartial during the proceeding.In the following,the record is clear that the trial court took a biased position against Appellant,throughout the entire proceeding,and specifically,the judge made these following comments in response to Appellant's testimony during the State's cross-examination:

."Okay.I know how it's gonna be.You go ahead and answer however you want to." (R.R.3:21).

."That doesn't make-sir,why don't you want to answer?You might as well just shut it down.Just shut it down.Because either you are having a real hard time understanding the questions,or you just don't want to say because you're trying to protect your buddy."(R.R.3:22).

."See-see how he has more loyalty to some thug,some theif,than he does to his own family?Go ahead sir;you keep playing this game."(R.R.3:23).

."I want to hear the conversations that were going on in that car,what y'all were doing all day.Obviously,you weren't out looking for a job,right?"(R.R.3 :24)

."No.You weren't working.You weren't doing anything-were you high?You were high.Did y'all go to a crack house?Were y'all talking about robbing people? Tell us the story.That's what he wants to know."(R.R.3:24).

."You think we're fools,don't you?"(R.R.3:24).

."Why don't you just be honest and say,I was robbing,we needed to rob,we needed money,we needed drugs so we were thinking of ways to make money illegally.Is that what happened?"(R.R.3:24-25).

Further,during the State's cross-examination,when the Appellant explained various details of his charge for aggravated on a public servant case,at R.R.3

2.

25-26,the Appellant stated that he was sitting in the car and the police offie-cer jumped in the window,but without saying a word to the Appellant as the Appellant was pulling out of the driveway..(R.R.3:26).The judge interrupted and erroneously said,"It sounds like you need a trial.Maybe if they bring the witness that saw you....Maybe it will refresh your recollection,you using a crow-bar.You don't remeber that?"(R.R.3:27).The Appellant explained that he did not remember a crowbar.Then when the prosecutor asked how the Appellant ran into a tree during the incident,and when the Appellant stated,"There was no tree out there,sir."(R.R.3:27).The prosecutor requested that the court withdraw Appellant's plea.(R.R.3:27).Appellant's attorney requested permission to"go back on redirect,"which the court allowed,(R.R.3:28),and again the Appellant was questioned by his counsel about the details that were included in the police report,and though the Appellant disagreed with some of the details from the police report,he did in fact,admit to committing the offense.However, the judge,during the redirect,violated the Appellant's due process,by her failure to remain impartial during the proceeding,and the trial court's biased position against the Appellant,when on redirect,asked additional questions of the Appellant,about the details of his burglary case,that included how the Appellant knew his codefendant and how they decided to commit the offense to-gether.(R.R.3:28-29,31).

Furthermore,when the prosecutor conducted additional cross-examination of A Appellant responding to his testimony by interjecting:(R.R.3:32-42),

."How far did you drive with the guy hanging out of your car?How far?(R.R.3 :32).

."You've said that about ten times...already,but you don't get to just stand there and say what you want.You really have to answer questions;otherwise,we're done."(R.R.3:32-33).

."Wow.So we have innocent civillians,trying to risk their life to get ahold of you.All righty."(R.R.3:33).

."Really?Huh-uh.No.You think you're the first drug addict we've met?...Then don't put it on drug addicts.You think drug addicts drive around with ammunition in the trunk of their car and drag police officers until they crash out in a-on a tree?Really,you think that's what drug-all drug addicts do?...No.You think all drug addicts assault police officers,burglarize people's homes?No.Most drug addicts don't violate the law,other than being a drug addict.But you want me to believe it's all-once you go to rehab everything's going to get better.Is that what you want me to think?"(R.R. 3:42).

."No,you're not[trying to change].I don't see it."(R.R.3:42).

3.

Even after the Appellant rested his case,both the defense and the State gave closing arguments,and the Appellant requested that the court address the Appellant's long-time drug problem,which had never been addressed,by sending him to an inpatient drug treatment program,such as Substance Abuse Felony Punishment Facility("SAFPF").The State asserted that,although drug use was a part of the problem,Appellant deserved a prison sentence.(R.R.3:44-46).

Also,the record,again demonstrated the trial court's active participation in the Appellant's punishment hearing,violating the Applicant's substantial rights,whereby no objection was required,to warrant the Appellant reversal and even the prosecutor knew and made it a part of the record,when he told the judge that he felt that and requested that the court should withdraw the Appellant's plea.R.R.3:27).A reversal of the Appellant's conviction does not require an objection,because of the record plain error and the fundamental unfairness of the proceeding that violated the Appellant's substantial rights as follows:(Note:After,both the State and Appellant made their closing arguments,the judge stated,"Mr.Ashford,this lady keeps raising her hand,wanting to say something.Do you want to call her as a witness or not?"(R.R.3:46).The record reflects"No audible response"from defense counsel.(R.R.3:46).The witness stated,"Yes,can I come up?"(R.R.3:46).The judge responded,"Come on up, ma'am.Raise your right hand."(R.R.3:46).This witness was sworn.(R.R.3:46).The judge told the witness to"[g]o ahead."(R.R.3:46).Although the record does not identify who this witness was by name,the record reflects that the witness is the Appellant's sister.(R.R.3:46).This witness testified that the Appellant is"a"crack-head"and has"a real crack problem."(R.R.3:46).Appellant's sister explained that although she too had a criminal bacground,she had reformed her ways.(R.R.3:46-47).The judge questioned Appellant's sister about how she had changed but the Appellant had not.(R.R.3:46-47).The court then proceeded to engage the witness in the following exchange:

THE COURT:What do you think about the-the families of the police officers that risk their life every time  they have to arrrest your brother?

UNIDENTIFIED PERSON:I understand.

THE COURT:How do you think it feels being a-see,you don't even want to l listen to me,do you?

UNIDENTIFIED PERSON:Yes,ma'am,I will.

THE COURT:I want you to put your place-put yourself in the place of a police officer,doesn't know whether he's gonna live or die because he sees your brother putting that car into drive and takes off-

UNIDENTIFIED PERSON:And I-

THE COURT:-and wondering if he's even going to survive this arrest.

UNIDENTIFIED PERSON:And I-

THE COURT:You do understand that?

4.

UNIDENTIFIED PERSON:Yes.I just-I'm telling you because I'm from like,the streets and stuff like that.And I know coke-crack cocaine,that's a hard drug.People will do anything to get drugs.Like I really see these people every day literally.

THE COURT:Ma'am,I'm sorry,but I have to disagree with your brother's attorney.I've been to lots of classes for drug abusers,and most drug abusers do not commit crimes like that.Most drug users are not criminals.They're not. Why don't you try to explain to me,then why-if he's found God,why he's rubbing on himself in front of the jailers or why he's got a razor in the jail,why he's misbehaving in the jail?

UNIDENTIFIED PERSON:I wouldn't under--wouldn't understand it,because when I was incarcerated,I stayed away from people.I don't-

THE COURT:It's not about you,ma'am.I'm asking you to explain to me why-if your brother really is changing,why would he behave like that in jail?

UNIDENTIFIED PERSON:I-

THE COURT:You can't blame that on him being a crack addict.

UNIDENTIFIED PERSON:No,ma'am.I feel like because he probably had to-because he's in an aggravated tank,he didn't-he's probably scared of people in there that done murdered people.And I would be scared of-

THE COURT:He's scared of people?

UNIDENTIFIED PERSON:Yes,he probably would be scared of other mens that have done probably killed people like-because I pray for my brother every day because of the kind of tank he in,because he's in an aggravated tank.

THE COURT:Have y'all-what have y'all done while he was free to sit him down and get him to-one second.Let me finish before you start talking.
UNIDENTIFIED PERSON:Yes,ma'am.

THE COURT:What have you and your family done while he has been a free to try and get him to change his life?

UNIDENTIFIED PERSON:When my brother was on crack and my cousin passed away, I went looking for my brother myself.When I went to go look for him.I found him in a dope-fiend house with nothing but crack heads out there smoking-

THE COURT:So what did you do?I want to know what you did-what you and your family did.Did you try to send him to rehab?Did you even have a conversation with him about it?

UNIDENTIFIED PERSON:I had a coversation with him.

THE COURT:You did?

UNIDENTIFIED PERSON:Yes,ma'am.

5.

THE COURT:What about his mother and his grandmother?

UNIDENTIFIED PERSON:My mamma done had conversations with him plenty of times,but my brother always run off.He-he'll be at the house for a minute;next thing you know he'll be running off because of the area we stay in.

THE COURT"Okay.So y'all have known he's had a problem since he's been to co college,and now you're here trying to tell me what to do?

UNIDENTIFIED PERSON:No,ma'am.I was-

THE COURT:Since y'all haven't been able to convince him on your own for years and years and years,stop hurting family,stop hurting yourself,stop risking your life and other people's lives- he hasn't listened to you.Whatever you and your family have tried to do,he hasn't listened.It hasn't worked.And now you're trying to tell me to what?

UNIDENTIFIED PERSON:No,I'm just saying I wasn't ever really trying to really help him.Like,by him being incarcerated,nobody took the time-I understand that he done done wrong,but it's no-it's no-like,he can't-and he probably be so nervous because I'm looking at him and I know him because I was raised up with him.

THE COURT:He's nervous?He drags a cop and he's nervous here in front of me?

UNIDENTIFIED PERSON:Yes.

THE COURT:I never understood that.

UNIDENTIFIED PERSON:When he was-during-at the time-

THE COURT:He wasn't scared out in the streets.

UNIDENTIFIED PERSON:He was under the influence.He was on drugs.

THE COURT:That's-

UNIDENTIFIED PERSON:They said they found it in him when he went to the hospital.He wasn't even in his right state of mind.Like-

THE COURT:He's not afraid of hanging out in crack houses,hanging out with people he doesn't know,getting high with people he doesn't know,driving around with a trunk full of weapons,but he's scared today?

UNIDENTIFIED PERSON:I-I would be,and I done changed,so-I understand we're n not talking about me,but I understand-

THE COURT:Oh,I know lots of people that have changed,ma'am.

UNIDENTIFIED PERSON:Yes.And I was raised up-and he did go to college.He never did get in trouble.I was always the one getting in trouble.

THE COURT:Well,and that's where he's different from most people.Most of the folks that come through here don't even have a high school diploma.And he's smart.

UNIDENTIFIED PERSON:And he-

THE COURT:He knows better.

UNIDENTIFIED PERSON:And he didn't really-and he-first,he started snorting cocaine-

6.

THE COURT:We can stop.I know he's a drug addict,ma'am,but you don't.With drug addicts that don't place people in harm's way,I can work with them.I can work with them a lot if all they're doing is shoplifting or-but when you have something that's willing to risk other people's lives and his own life-you know your bother's lucky to be alive? **right?**

UNIDENTIFIED PERSON:Yes,ma'am.

THE COURT:You watch the news right?

UNIDENTIFIED PERSON:Yes,ma'am.

THE COURT:You know that he's lucky the cop didn't put a gun-a hole in his head,right?

UNIDENTIFIED PERSON: Yes,ma'am.

THE COURT:How many guys have gotten killed because they run from cops?

UNIDENTIFIED PERSON:Numerous of them-people.

THE COURT:Yeah-yeah,so you just need to be thankful that he's alive and safe in the jail.Because if it would have been any other cop,he'd be dead.

UNIDENTIFIED PERSON:Can I tell you something?

THE COURT:Go ahead.

UNIDENTIFIED PERSON:When I was incarcerated,I was super excited because-when I was away from my daughter-I mean I felt like nobody wasn't-wasn't helping me,just threw me in jail because nobody would help me.I'm not asking for sympathy because I pray-

THE COURT:So how did you get straight?

UNIDENTIFIED PERSON:I prayed.I stayed in the single cell because I hurt my leg by jumping becayse I went to Hope Literacy.I was in-

THE COURT:What made you decide to leave the life of crime?What made you?

UNIDENTIFIED PERSON:Because the-leave the life of-

THE COURT:Of crime,yeah.

UNIDENTIFIED PERSON:-crime?Because of my child.

THE COURT:Okay.

UNIDENTIFIED PERSON:It was for her.

THE COURT:Well,what's the difference between you and your brother?How come you can do it and he can't?

UNIDENTIFIED PERSON:Because I wasn't on drugs.I wasn't on-

THE COURT:Oh,okay.

UNIDENTIFIED PERSON:And I feel like if he go back to the same neighborhood,it's going-it's probably gonna happen again.All I'm just asking-even if you send him to-whereever you decide to do,just,please,can you get

7.

him some help.That's all I pray for in asking you to do,just help him because ain't nobody ever really tried to help him.

THE COURT:I don't think that's true.I think two courts have placed him on probation already and tried to help him and he-

UNIDENTIFIED PERSON:They never srnt him to a rehab,like-I don't evenkbelieve he went to Wilmer.I don't believe he ever went to no rehab to try and get him some help.He-I don't know why he won't tell the truth.He's a real crack head.He walks the street at night.When my cousin passed away,it was the most horrible thing because he got killed by a police officer;he didn't even come to the funeral,so he was in the streets.We couldn't even get him-

THE COURT:What's yourrcousinšs name that got killed by the police?

UNIDENTIFIED PERSON:Jaques Howard.The police shot him.He wasn't nothing but 20 years old.I found him.I would go look for him because he was nowhere around.He was in a crack-a crack house with nothing but crack heads.I said, Tadarrian-I cried to him,can you please come to the house and go to the funeral with me.He said,Erica(phonetic),I'll be there in the morning.He never showed upobecause he's so much on crack.T see crack heads every day.

THE COURT:So do I,ma'am.All righty.Anything else you want to say?

UNIDENTIFIED PERSON:No,ma'am,just thank you for letting me talk.

THE COURT:All righty.Thank you.

(R.R.3:47-56).Without asking either defense counsel or the State whether they had any questions for this witness,the court immediately proceeded to engage Appellant as follows:

[THE COURT:]...Why would you do that to your sister?Why?Why do you put your through all of that and her little baby girl and your grandmother and your mother?Why?

THE DEFENDANT:I don't intentionally try to-

THE COURT:Tes,you do.Oh you think life just happens to you?

THE DEFENDANT:No,ma'am.

THE COURT:You think somebody just sticks a crack pipe in your face and forces you to do it?

THE DEFENDANT:No,ma'am.

THE COURT:And even then somebody forces you to run from cops all the time? It seems to me like you have a death wish,you just want somebody to put a bullet in your head.Is that what's going on?

THE DEFENDANT:No,ma'am.Your Honor,I'm not a violent person.

8.

THE COURT:Oh,really?Tell that to the cops that tried to arrest you over and over again.You want me to ignore your conviction for assault on a peace officer?

THE DEFENDANT:No,no. m

THE COURT:You want me to ignore your coviction for resisting arrest?

THE DEFENDANT:No,ma'am.

THE COURT:Is that what you want me to do?

THE DEFENDANT:No,ma'am.

THE COURT:Okay.Well,then,you know,nothing that you're sayong,one can be belived because you lied so much alreadt.Your own sister says you're not telling the truth.Your sister calls you a crack head that's roaming the streets;is that true?

THE DEFENDANT:No,ma'am.I don't roam the streets.

THE COURT:All righty.I'm finding you guilty in each case,setting your punishment at ten years'confinement in prison.

(RR3:56-58).The proceedings concluded,(RR3:58).

In the case at bar,this court should grant review and reverse the decision of the Court of Appeals,because the Appellamt's substantial right to a fair trial,in a fair tribunal,was disregarded,in that the aforementioned record does contradict the correctness of the Court of Appeals'affirmance because the record does,in fact demonstrate that the Appellant's **substantial** rights were violated during his plea-proceedings,his right to confront those in accordance with the Confrontation Clause and also the Appellant's right to cross-examine the UNIDENTIFIED PERSON:,compounded **with** the record fact that his judge failed to act impartially,whereas,the record shows a clear and plain error by the court's use of the words"we"änd "us",when the judge is speaking in the plea-proceeding against the Appellant and as an advocate for the state,therefore disregarding the Appellant's substantial right,during his plea-proceeding,to have his plea-proceedings held before a neutral and detached judge with no actual bias against him,and in accordance with Gagnon v.Scarpell,411 U.S.778,786(1973);Brumit v.State,206 S.W.3d 639,645(Tex.Crim.App.2006).Further,in U.S.v.Rodriguez,197 F.3d at 158-159,it was clearly stated that: "Although a district court may reject a plea-agreement and expeess its reasons for doing so,Rule 11(e)(1),is clear in its prohobition against"all forms of judicial participation in or interference with the plea negotiationsprocess." The reasons for this bright line rule have been expressed in a number of cases decided by this court."First,it diminishes the possibility of judicial coere- ionnof a guilty plea,regardless whether the coercion would actually result in

9.

an involuntary guilty plea.Second,the judge's involvement in the negotiations is apt to diminish the judge's impartiality.By encoraging a particular agreement,the judge may feel personally involved,and thus resent the defendant's rejection of his advice.Third,the judge's participation creates a misleading impression of his role in the proceedings.The judge's role seems more like an advocate for the agreement than a neutral arbiter if he joins the negotiations."Also,see U.S.v.Anderson,993 F.2d 1435(9th Cir.1993).

Moreover,in the instant case,the record most certainly demonstrates that the judge's active participation in the Appellant's punishment did violate his substantial right and the appellate court erred in determining that the Appellant's substantial rights in the context of the Confrontation Clause,right to cross-examine,and the right to have his judge remain as a neutral arbiter,all contradicts the Court of Appeals'Opinion,that the recorded facts described,did not affect his rights,whereby,these clear and plain errors,shown in the record,should not require an objection despite these plain errors because the errors did affect Appellant's substantial rights to a fundamentally fair trial in a fair tribunal.In re Murchison,349 U.S.133,136(1955);U.S.Constitutional amendment XIV,and Texas Constitution article I & 19(providing for due course of la law).(Also,see U.S.v.Vonn,122 S.Ct.1043(2002),in relevant part to no objection is required from the Appellant("Petitioner")because the record shows plain error and the fact that his substantial rights were affected).

GROUND FOR REVIEW

## GROUND FOR REVIEW NUMBER TWO

THE COURT OF APPEALS ERRED IN FINDING THAT THE TRIAL COURT'S FAILURE TO RE-MAIN NEUTRAL AS AN ARBITER,DID NOT DEPRIVE THE APPELLANT OF HIS RIGHT TO DUE PROCESS.

## ARGUMENT

The Court of Appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of the United States Supreme Court and the Court of Criminal Appeals.

In the instant case,the Court of Appeals erroneously entered into the record that the Appellant's due process was not deprived when the record clearly shows that the judge failed to remain impartial,which was the Appellant's absolute right and the judge's record partiality cannot be forfeited during the Appellant's plea proceeding.Appellant's due process was clearly violated by the judge's erroneous conduct,when she questioned facts from and about the Appellant's case,rather than just the law.In U.S.v.Anderson,993 F.2d 1435(9th Cir.19 93),it was held that;"Regardless of whether defendant was shown actual prejud-

10.

ice,defendant who has pleaded guilty ~~when~~ *after* judge has participated in plea di-
scussions is entitled to be ~~~~ *replaced*.See Federal Rules of Criminal Procedure
Rule 11(e)(1),18 U.S.C.A.Further,Constitutional Law states:Due process demands
an impartial adjudicator to make a ruling based in admissible evidence in a
forum with the oppurtunity to cross-examine and present evidence as allowed.Th
Therefore,in the instant case,when the trial court actively participated and
became an advocate in the Petitioner's("Appellant")adversarial process and lo-
st her neutral role ~~and~~ detached role that is required of a judge,when the
Appellant's judge questioned both the Appellant and his sister about his appl-
cation for community supervision SAFP,clearly is plain error because almost al
all of the judge's questions went beyond judicial conduct and what was necess-
ary for a determination of the Petitioner's application for SAFP.

This court should grant review and reverse the decision of the Court of App-
eals.

## PRAYER FOR RELIEF

Appellant prays that this Court grant review and upon final hearing,that judg
gment and sentence be set aside and the cause remanded below.

Respectfully submitted,

MR.TADARRIAN A.JOHNSON
#1936248
Coffield Unit/TDCJ-CID
2661 FM 2054
Tennessee Colony,Texas
75884

11.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing document was sent to the State Prosecuting Attorney,at P.O.Box 12405 Capitol Station,Austin,Texas,78711,on this 15th day of October,2015,and also on this same date,the main or original above said document was sent to the clerk of the Court of Criminal Appeals,by prepaid U.S.mail,at P.O.Box 12308 Capitol Station,Austin,Texas 78711.

TADARRIAN A.JOHNSON

12.

AFFIRM; and Opinion Filed July 31, 2015.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-14-00791-CR
No. 05-14-00792-CR
No. 05-14-00793-CR

TADARRIAN ANTWOINE JOHNSON, Appellant
V.
THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court
Dallas County, Texas
Trial Court Cause Nos. F13-59105-Q, F13-59106-Q, and F13-59536-Q

# MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Brown

After Tadarrian Antwoine Johnson pleaded guilty to the offenses of aggravated assault of a public servant, burglary of a building, and evading arrest without the benefit of plea agreements, the trial court assessed punishment at ten years' confinement in the aggravated assault case and ten months' confinement in each of the remaining cases. In two issues, appellant contends we must reverse and remand these cases for a new punishment hearing because the trial court's failure to remain a neutral and detached arbiter violated his due process rights under the United States and the Texas Constitutions. After reviewing the record, we conclude appellant did not preserve error regarding these complaints because he failed to object to the trial court's conduct. Thus, we overrule appellant's issues and affirm the trial court's judgments.

In two issues, appellant contends the trial judge actively participated in appellant's punishment hearing to the degree that (1) she abandoned her role as a neutral and detached arbiter, (2) her extensive cross-examination of appellant and numerous comments reflected a clear bias against appellant, and (3) her decision to "call her own witness to the stand" reflects the trial court's "clear intent to actively engage in the advocacy process" against appellant. According to appellant, this abandonment of the court's impartial role violated his constitutional rights to due process and due course of law under both the United States and Texas Constitutions. In making this argument, appellant acknowledges he failed to object but contends the pervasive and harmful nature of the questions and comments in this case constitute fundamental error and, therefore, an objection was not required to preserve error. After reviewing the record and the law, we cannot agree.

Most appellate complaints must be preserved by a timely request for relief at the trial level. *See* TEX. R. APP. P. 33.1, *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013), *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993). Even claims involving constitutional error, including claims that due process rights have been violated are waived by failing to object. *Hull v. State*, 67 S.W.3d 215, 218 (Tex. Crim. App. 2002); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). More particularly, this general rule applies to complaints regarding improper judicial comments, except when the judicial comments rise to the level of fundamental error. *See Unkart*, 400 S.W.3d at 99.

In *Marin*, the court of criminal appeals identified and defined three categories of rights belonging to litigants. *Marin*, 851 S.W.2d at 279. Appellant maintains the unique facts and circumstances in this case fall within the first of the three categories of rights defined in *Marin*. That category concerns "absolute requirements and prohibitions" or "systemic" rights "which are essentially independent of the litigant's wishes." *Sanchez v. State*, 120 S.W.3d 359, 366 (Tex.

Crim. App. 2003); *Marin*, 851 S.W.2d at 278. These absolute or fundamental rights are not subject to the preservation requirements of rule 33.1 *See Sanchez*, 120 S.W.2d at 366. The clearest cases of such rights are laws affecting the jurisdiction of the courts. *Id.*

In *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.), the court of criminal appeals granted relief on an improper-judicial-comment complaint that was not preserved at trial. *See id.* at 133, 135. However, the court did not agree on a rationale for granting relief and, consequently, *Blue* is a plurality decision with no precedential value. *Unkart*, 400 S.W.3d at 100-101. Thus, the separate opinions in *Blue* may only be considered for any persuasive value they might have. *Id.* at 101. Because *Blue* concerned comments of the trial judge which tainted appellant's presumption of innocence in front of the venire, we conclude it is not persuasive in this case involving comments made at the punishment hearing before the trial court after appellant pleaded guilty to the offenses charged.

Here, appellant did not object to any of the numerous complained-of comments by the trial court or her conduct in calling a witness to the stand. When the trial court asked whether there was "any reason at law" why the sentences should not be formally imposed, appellant said, "No." Finally, although appellant filed motions for new trial in these cases, he did not contend his due process rights had been violated by the trial court's conduct and appellant did not file motions to recuse or in any way request a new punishment hearing.

Although we do not condone the level of the trial court's participation nor her demeanor during this punishment hearing, we disagree with appellant that the record demonstrates such unique circumstances that no objection was required. Because appellant failed to object at any time to the trial court's conduct in these cases, we conclude appellant has failed to preserve error for our review. We overrule appellant's issues.

Accordingly, we affirm the trial court's judgments in this case.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
Tex. R. App. P. 47

140791F.U05

-4-



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

TADARRIAN ANTWOINE JOHNSON,
Appellant

No. 05-14-00791-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1359105-Q.
Opinion delivered by Justice Brown. Justices
Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 31st day of July, 2015.



# Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

TADARRIAN ANTWOINE JOHNSON,
Appellant

No. 05-14-00792-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1359106-Q.
Opinion delivered by Justice Brown. Justices
Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of July, 2015.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TADARRIAN ANTWOINE JOHNSON,
Appellant

No. 05-14-00793-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1359536-Q.
Opinion delivered by Justice Brown. Justices
Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of July, 2015.